## 50579. NATIONAL INDEMNITY COMPANY v. BERRY et al.

STOLZ, Judge.

In the complaint as finally amended, Richard Berry, individually and as temporary administrator of the estate of Earnest Calvin Berry (his deceased son), Mary Berry, Bertha M. Berry and Joe L. Berry, sued National Indemnity Company, Juddy Rabun d/b/a Rabun Insurance Agency, and Richard Berry, as temporary administrator of the estate of Warren Brinson, in the Superior Court of Columbia County. The suit arose out of an automobile collision on October 17, 1970, in Jefferson County, Ga., in which Earnest Calvin Berry was killed while a passenger in a vehicle driven by Bertha Berry, the wife of Joe L. Berry, which was owned by Richard Berry. Warren Brinson, the driver of the other vehicle involved in the collision, was also killed thereby and was an uninsured motorist.

The record reveals that since 1967 Richard Berry had purchased liability insurance from defendant Juddy Rabun, d/b/a Rabun Insurance Agency (Rabun), in Wrens, Jefferson County, Georgia (R. 150) under an arrangement whereby Rabun would keep Richard Berry insured and allow Richard Berry to pay him from time to time. (R. 85, 135-137) Initially, Rabun placed Richard Berry's liability insurance with Charter Oak (Travelers) Fire Insurance Co. In September, 1969, as the result of a substantial increase in premiums, Rabun and Richard Berry decided not to renew the Charter Oak policy and placed Richard Berry's liability coverage with defendant National Indemnity Co. A liability policy was issued to Richard Berry by that company for the period October 16, 1969 to October 16, 1970. The record shows that, while Rabun had the authority to issue binders and policies for several insurance companies, he did not have any such authority from National Indemnity Co. The only entity in this state with authority to service, underwrite, sell, or produce insurance policies for National Indemnity Co. was Southern Insurance Underwriters, Inc., by and through W. C. Duesenberg. (R. 52) There was never a contractual relationship between

Rabun and National Indemnity Co. and/or Southern Insurance Underwriters, Inc. (R. 52, 86-87, 105)

When Rabun received the National Indemnity Co. policy on October 23, 1969, he sent the original to First State Bank, the auto lienholder, and a copy to Richard Berry with an annual premium quotation of $561. (R. 101) On October 30, 1969, Richard Berry paid Rabun $100 on the premium (R. 102), but did not pay the full premium during the policy year. (R. 103-104) On September 14, 1970, Rabun wrote Richard Berry, "There is a balance on the ledger of $121.00. Your policy will expire October 16, 1970 and it will have to be renewed. Please let us hear what your wishes are in the matter." (R. 105; Exhibit p. 6) Richard Berry denied receiving this letter. On September 23, 1970, Southern Insurance Underwriters, Inc., as agent for National Indemnity Co., notified Rabun of the policy's expiration on October 16, 1970, quoted the next year's premium, advised that it could be paid in instalments, and enclosed a renewal application. (R. 58, 126; Exhibit p. 7) Richard Berry did nothing to renew his policy or keep it in effect, even though he knew the policy was to expire on October 16, 1970, and that he wouldn't have any insurance after the date. (R. 149, 168) The collision in question occurred on Saturday, October 17, 1970. Richard Berry testified that on the following Monday he went to Rabun's office and offered to pay the $121 and to renew the policy, but was refused. (R. 142).

The liability insurance policy had expired by its terms and could not be the basis of a suit against National Indemnity Co. "Most of the issues before us are controlled by general contract law, insurance being a matter of contract. *Cherokee Credit Life Ins. Co. v. Baker,* 119 Ga. App. 579 (1) (168 SE2d 171). 'There is no greater sanctity and no more mystery about a contract of insurance than any other. The same rules of construction apply to it as to other contracts.' *Clay v. Phoenix Ins. Co.,* 97 Ga. 44, 53 (25 SE 417). Accord: *North British &c. Ins. Co. v. Tye,* 1 Ga. App. 380 (1) (58 SE 110). ' "It is well to keep in mind . . . that insurance is purely a matter of contract." ' *Mitchell v. Federal Life Ins. Co.,* 57 Ga. App. 206, 208 (194 SE 921)." *Parris & Son v. Campbell,* 128 Ga. App. 165, 168

(1) (196 SE2d 334). See also Code Ann. §§ 56-2402, 56-2403, 56-2407.

In *Garner v. Govt. Employees Ins. Co.,* 129 Ga. App. 235, 236 (199 SE2d 350), this court quoted from Code Ann. § 56-2430.1(C) as follows: " '(1) No insurer shall fail to renew a policy to which this section applies unless a written notice of nonrenewal is mailed or delivered to the named insured, at the address shown on the policy, at least 20 days prior to the expiration date of the policy, . . .,' and '(2) This subsection shall not apply . . .(c) if the insurer has manifested its willingness to renew by delivery a renewal policy, renewal certificate or other evidence of renewal to the named insured *or his representative* or by offering to issue a renewal policy, certificate or other evidence of renewal, *or has manifested such intention by any other means.' "* (Emphasis supplied.) It then held, "While mailing alone as to a notice of *intent not to renew* is expressly provided by the statute to be a sufficient giving of that notice (Code § 56-2430.1(D)); yet no such express provision is made for the giving of the notice of willingness or intent *to renew,* so as to prevent the automatic renewal of the policy because of failure to give the notice which could have been made by mailing alone. Under either of the well-known rules as to construction of legislative enactments expressio unius est, exclusio alterius, or expressum facit cessare tacitum, we cannot, by implication hold that the mere mailing, without receipt by the addressee, constitutes notice of intent or willingness to renew." P. 236 (2).

Here it should be noted that in *Garner* the purported intention to renew was mailed to, but not received by, the insured. In the case before us, the intention to renew was mailed to Rabun Insurance Agency, as representative of Richard Berry. There is no issue presented under the evidence before us as to the receipt of this notice by Rabun Insurance Agency or that the insured, Richard Berry, knew that his policy was going to expire on October 16, 1970, unless he renewed it by payment of premium or that Rabun Insurance Agency was not the agent of National Indemnity Co. but merely an insurance broker and agent for Richard Berry.

In deposition, Juddy Rabun, d/b/a Rabun Insurance Agency, deposed that he did not have binding authority with National Indemnity Co. (R. 86), that he did have binding authority with Travelers Insurance Company (R. 87), that he has binding authority with all the companies he has a contract with—St. Paul Fire and Marine, General Insurance Co. of America, Southern Guaranty Insurance Co., Safeco Insurance Co. (R. 88), that he did not represent National Indemnity Co. and had no authority to bind, cancel, renew, or issue endorsements of any kind (R. 105), that he had no authority to act for National Indemnity Co. (R. 111-112), that he received no instructions from the company (R. 114), that he has no working arrangement or connection with National Indemnity Co. (R. 114-115, 124).

"Ordinarily an insurance agent represents the company, as stated in the title Insurance § 138, 32 C. J. p. 1053 notes 60-62, whereas an insurance broker represents insured, as stated in the same title § 140, 32 C. J. p. 1054 note 73-p 1055 note 81. An insurance agent during his employment sustains a fixed and permanent relation to the company he represents; he is clothed with general powers, and assumes responsibilities not conferred on, or assumed by, a broker; and he owes a duty and allegiance to the company employing him, and seeks patronage only for the profit and benefit of such company and is precluded from soliciting insurance business for others; whereas an insurance broker, as generally understood, owes no duty or allegiance to any particular corporation." 12 CJS 9, Brokers, § 3.

"An insurance agent is one employed by an insurance company to solicit risks and effect insurance, and in some jurisdictions this definition is in effect given by statute. As defined in Brokers § 1, an insurance broker is one who acts as a middleman between insured and the company; one who solicits contracts from the public under no employment from any special company, but having secured an order places the insurance with the company selected by insured, or, in the absence of any selection by him, with the company selected by such broker." 44 CJS 797, Insurance, § 136.

"An insurance agent, as far as insurer is concerned,

is a person expressly or impliedly authorized to represent it in dealing with third persons in matters relating to insurance, and an insurance solicitor is one who acts as a middleman between insured and insurer, and who solicits insurance from the public under no employment from any special company, but, having secured an order, places the insurance with a company selected by insured or, in the absence of any selection by him, with a company selected by the solicitor." 44 CJS 797, Insurance, § 137. See also 44 CJS 798, 802, Insurance, §§ 139, 140.

Georgia case law has recognized the distinction between an agent for the insurer and one for the insured. See *State Farm &c. Ins. Co. v. Collins,* 75 Ga. App. 335 (4) (43 SE2d 277); *Georgia Ins. Service, Inc. v. Wise,* 97 Ga. App. 461 (103 SE2d 445); *Sutker v. Pennsylvania Ins. Co.,* 115 Ga. App. 648 (155 SE2d 694).

The purpose of Code Ann. § 56-2430.1 (C), supra, is to provide the insured with notice as to the status of his policy. When the record affirmatively shows compliance with the statute by the insurer, knowledge of the policy's status, and admitted inactivity and nonresponse by the insured to effect a renewal thereof, the law should not create a contractual relationship due to after-the-fact circumstances. On the date of the collision in question, the liability insurance policy issued by National Indemnity Co. to Richard Berry had expired and afforded no insurance coverage to its holder.

The trial judge erroneously granted the plaintiff's motion for partial summary judgment holding the defendant National Indemnity Co. liable to the plaintiffs for damages as a matter of law. The trial judge erred in failing to grant the defendant National Indemnity Co.'s second defense alleging that the complaint failed to state a claim against such defendant upon which relief can be granted (which is treated herein as a motion for summary judgment pursuant to Code Ann. § 81A-112 (b)). The judgment of the trial court is reversed with instructions that judgment be entered sustaining defendant National Indemnity Co.'s second defense.

*Judgment reversed. Bell, C. J., Pannell, P. J., Deen, P. J., Quillian, Clark, Webb and Marshall, JJ., concur. Evans, J., dissents.*

550

*Barwick, Bentley & Binford, Warren W. Wills, Jr.,*
for appellant.
*George B. Rushing,* for appellees.

Evans, Judge, dissenting.

Suit was filed in Superior Court of Columbia County,
Georgia by several plaintiffs, to wit, Mary Berry, Bertha
M. Berry, Joe L. Berry, and Richard Berry, individually,
and also in his representative capacity as administrator
of the estate of Earnest Calvin Berry. The suit grew out
of an automobile collision in which Earnest Calvin Berry
was killed, Bertha M. Berry was injured, and Richard
Berry suffered property damage. Joe L. Berry was the
husband of Bertha M. Berry, and his claim was for
loss of services, medical expenses, and other expenses
incurred on account of his wife's injuries. Mary Berry
(mother of the deceased) sued for wrongful death.

The defendants named in the complaint were Juddy
Rabun, d/b/a Rabun Insurance Agency, National In-
demnity Company, and also one of the plaintiffs, to wit,
Richard Berry, as administrator of the estate of Warren
Brinson, who was alleged to be an uninsured motorist.

The complaint proceeded on multi-causes of action,
including wrongful homicide, personal injury, loss of
consortium, automobile damages, wrongful breach of
an insurance contract, fraud, equitable reformation of
the insurance contract, general and punitive damages,
attorney fees, and 25% penalty for bad faith of the
insurance company.

Defendants answered the complaint and denied
liability, and filed certain other defenses, some of which
will be dealt with hereafter.

Plaintiffs moved for partial summary judgment,
which the lower court granted, and one defendant only,
to wit, National Indemnity Company, the insurer,
appeals to this court.

1. Because of the request for *equitable reformation*

of the contract in the fourth count of the petition, this case was transferred to the Supreme Court, but by order of that court the case was returned to this court for determination.

2. Under Richard Berry's policy, the various plaintiffs here are all members of a class of "insured" under the uninsured motorist coverage of the policy. All of the plaintiffs fit into the category of "the named insured," "relatives," "spouse," "resident of the same household," or "personal representative" of the above. See Code Ann. § 56-407.1 (b).

3. Code § 56-407.1 (j) provides: "If the insurer shall refuse to pay any insured, any loss covered by the provisions of this section within 60 days after a demand has been made by the insured and a finding has been made that such refusal was made in bad faith, the insurer shall be liable to the insured in addition to any recovery under the provisions of this section for not more than 25 per cent. of the recovery and all reasonable attorney's fees for the prosecution of the case under the provisions of this section."

The defendant insurer refused to pay any claim after demand and contended the insurance had terminated. As finally amended, a number of tort actions are involved in this one suit against the insurer, National Indemnity Company, first defendant; Juddy Rabun, second defendant; and Richard Berry, as temporary administrator of the estate of Warren Brinson, deceased, the uninsured motorist, as third defendant.

4. Plaintiffs allege the violation of the contractual relation by the insurer and Rabun is in bad faith, and that the breach of the statutory duty to renew or give 20 days advance notice by mail of intention not to renew is likewise in bad faith. Plaintiffs also plead tort actions against the uninsured motorist, and an action for fraud, and an action for reformation of the insurance contract, against the insurer and its agent, Rabun.

Under the law above cited, plaintiffs, as insured persons under the policy, are entitled to seek punitive damages and attorney fees.

5. Defendant insurer, a foreign corporation, admits doing considerable business in Columbia County where

this suit was filed, and that its registered agent was served by second original in Fulton County. However, it insists the the venue of the suit is improper and that suit should have been filed in Fulton County (Code Ann. § 22-404) where it is deemed by statute to reside, or Jefferson County, where the alleged tortfeasor, Rabun, resides. See also Code Ann. § 56-1201 (3) (4). Defendant does not contest the service of the second original on the designated agent in Atlanta, but does contest the service upon an employee of an insurance agency in Columbia County.

Code Ann. § 56-1201 (2), supra, states that an insurer may be sued in "any county where the company shall have an agent *or place of doing business."* Under Code Ann. § 81A-112 (d), the court heard this objection to jurisdiction and venue before trial and ruled against the insurer. While the insurer insists that it had no agent in Columbia County for service, yet its operation or doing business through an insurance broker in Columbia County was equivalent to having a place of doing business there for the purpose of selling insurance.

Thus the trial judge was authorized to hold defendant insurer had a place of doing business in Columbia County. In *Beard v. Calvert Fire Ins. Co.,* 114 Ga. App. 249 (2) (150 SE2d 711), this court held that: "The evidence authorized the finding that the defendant company transacted a sufficient amount of its business at the office at which the process was left to constitute said office as its usual and ordinary place of business . . ." That case goes on to hold at page 251 that, " ' *The'* place is not construed as being restricted to the *sole* place of business."

The evidence before the lower court in the case at bar shows that the insurer transacted $42,965 in business by and through an insurance broker located in Columbia County. See *Seminole County Bd. of Ed. v. American Ins. Co.,* 180 Ga. 661 (1) (2), 666, 671 (180 SE 229). This foreign insurer cannot successfully contend that *it had only one* agent in Georgia, and venue of all suits against it is where this agent resides.

In the hearings as to the attack on jurisdiction and venue, while formerly all factual issues had to be

determined by a jury, now, under Code Ann. § 81A-112 (d) such function as to venue and jurisdiction is handled solely by the judge, unless the judge, in his discretion, wishes to have the matter settled at the trial by a jury. Here the judge did not so elect. *Watts v. Kegler,* 133 Ga. App. 231, 233 (3) (211 SE2d 177); *Hatcher v. Hatcher,* 229 Ga. 249, 250, 251 (190 SE2d 533).

6. As the second defendant, Rabun, has not appealed, the question as to whether or not he was properly served, or whether a claim exists against him in the suit in Columbia County, is not before us for determination.

7. We are not at this time concerned with rulings involving the actions against the temporary administrator of the estate of Warren Brinson, deceased, as an uninsured motorist. However, we do point out that in common law actions, the same person cannot be both plaintiff and defendant in the same action, even in different capacities. *Langford v. Johnson,* 46 Ga. App. 444 (3) (167 SE 779) and cases cited. Aliter in some equity cases. See *MacDougall v. Nat. Bank of Columbus,* 150 Ga. 579 (104 SE 630). If this case should proceed further against Richard Berry, the third defendant, a new and different representative of the deceased, Warren Brinson, should be substituted in the place of Richard Berry. Otherwise it would be subject to the objection that plaintiff and defendant is one and the same party in the same case, even though in different capacities.

8. As to the question of termination of coverage, the defendant, National Indemnity Company, failed to give the required 20 days' advance notice of its intention not to renew the policy. It did forward a renewal application to the broker, who failed to notify the insured, but this does not meet the requirements of law. See Code Ann. § 56-2430.1 (c). Nor did the insurer notify the named insured of his possible eligibility for insurance through the Georgia Automobile Association Plan as set forth in Code Ann. § 56-2430.1 (2), supra. The insurance was therefore automatically renewed by operation of law, and coverage existed, regardless of whether or not this policy might be reformed to continue until October 20, 1970. See *Garner v. Govt. Employees Ins. Co.,* 129 Ga. App. 235 (199

SE2d 350), which at page 237 holds that the failure to notify the insured of insurer's intentions with regard to renewal results in an automatic renewal and that a recovery under the policy involved was authorized.

9. Defendant insurer contends that plaintiffs have no standing to sue it because they did not allege that they had first sued the uninsured motorist as required by Code Ann. § 56-407.1, and cites *State Farm Mut. Auto Ins. Co. v. Girtman,* 113 Ga. App. 54 (147 SE2d 364) and *King v. State Farm Mut. Auto. Ins. Co.,* 117 Ga. App. 192 (160 SE2d 230).

Plaintiffs contend the insurer *waived* its right to insist upon this point. Plaintiffs named the insurer as first defendant in paragraph 2 of complaint, and in paragraph 3 they named Juddy Rabun as second defendant, and in paragraph 4 they alleged that second defendant was at all times acting for and on behalf of the first defendant as its duly qualified representative and agent within the course and scope of said agency. Plaintiffs, in paragraph 13 of the complaint allege: "The plaintiff has fully complied with all terms and with conditions of said policy and with all the terms and conditions controlling his account with the second defendant, and plaintiff has complied with the sixty (60) days statutory requirement for seeking punitive damages." First defendant insurer alleged it was without sufficient information to form a belief as to the truth "of the remaining averments" (which included all paragraphs of complaint following paragraph 12); and the second defendant, Rabun, "denies" the allegations of paragraph 13.

Further, both the insurer and Rabun each pleaded in general terms that "the complaint fails to state a claim against this defendant upon which relief can be granted."

Thus, it seems that the issue of complying with prerequisites (such as filing suit against the uninsured motorist before filing suit against the insurer) was not pleaded by either of these defendants and was therefore waived. We mention the second defendant here because complaint alleged second defendant was at all times acting for and on behalf of first defendant as its agent and in the scope of employment; and plaintiffs had alleged

compliance with all terms and conditions of the policy and with all terms and conditions of their account with second defendant.

But the statute, under the new Civil Practice Act, does not require that plaintiff allege compliance with prerequisites at all; and if plaintiff elects to do so, it may plead in general terms. Then there is imposed upon the defendant the absolute duty of being *very specific* if it elects to defend because of failure of plaintiff to comply with some condition precedent. The Civil Practice Act deals with this question in Code Ann. § 81A-109 (c) as follows: "In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. *A denial of performance or occurrence shall be made specifically and with particularity.*" (Emphasis supplied.) Hence, it will be noted that plaintiff, though not required to plead performance of conditions precedent, if he elects to do so, may "aver generally," but the defendant is treated quite differently by this statute. If the defendant is going to defend upon the ground that plaintiff has not complied with one or more conditions precedent, defendant must spell out in detail exactly what condition precedent plaintiff has not complied with; he must allege "specifically and with particularity."

At first blush it may seem as if the lawmakers imposed a greater burden on defendant than on plaintiff, but one of the purposes of the Civil Practice Act has been said to prevent trial by ambush. In order for a plaintiff to allege with specificity that he has complied with each condition precedent in a policy of insurance would require reams of paper; whereas the defendant is only required to point out with particularity any condition precedent as to which defendant contends plaintiff did not comply.

Simply to say that the complaint fails to set forth a claim on which relief can be granted, and to aver that it has no knowledge or information with which to answer plaintiffs' averments as to compliance do not meet the requirements imposed upon a defendant in Code Ann. § 81A-109 (c).

Additionally, in *U. S. F. & G. Co. v. Lockhart,* 124 Ga.

App. 810 (186 SE2d 362), affirmed in 229 Ga. 292 (191 SE2d 59), it is held that where the insurance company leads the insured to believe it will pay without the necessity of first bringing an action against the uninsured motorist, this conduct is such *fraud* as estops the insurance company from pleading failure to sue the uninsured motorist. In the case at bar, plaintiffs allege a different character of *fraud* against the insurer, in that the insurer contended there was no insurance coverage nor even a policy of insurance in existence; and plaintiffs assert the insurers could not insist upon a prior suit against the uninsured motorist while the insurance company was fraudulently contending that there was no policy in existence.

Under all of these circumstances, the defendant insurer waived its right to insist that the uninsured motorist be sued to judgment before suit could be filed against the insurer. In my opinion, the court did not err in awarding plaintiff a partial summary judgment.

10. Claims involving an action for fraud, and also an action for reformation of the insurance contract, remain against the defendant foreign insurer, although the question of sufficiency of pleadings to reform the instrument comes within the jurisdiction of the Supreme Court to review on appeal. The tort action for fraud must be determined by a jury. I therefore would hold that the court did not err in denying defendant's defenses of lack of jurisdiction, failure to state a claim, and motion for summary judgment or partial summary judgment.

For all of the foregoing reasons, I dissent from the judgment of reversal and the majority opinion. I contend that majority commits grave error in holding the trial judge erred in failing to grant the defendant-insurer's second defense; and further erred in holding that the complaint failed to state a claim against defendant; and that after hearing evidence and treating same as a motion for summary judgment, the majority errs in holding that same should have been sustained in favor of the defendant, National Indemnity Company.